IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CAROL MARUS, | ) | Civil Action No. 3:06-02985-GRA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On April 12, 2004, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 27, 2006, at which Plaintiff appeared and testified, the ALJ issued a decision dated June 27, 2006, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform during the period at issue (between her alleged onset date of May 1, 1997, and the date her insured status expired on March 31, 2002).[1]

---

[1] Plaintiff had to show that she was disabled on or before March 31, 2002, the date her insured status expired. See 42 U.S.C. § 423(a); see also Roberts v. Schweiker, 667 F.2d 1143, 1144 (4th Cir. 1981); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Plaintiff was fifty years old as of the date her insured status expired. She has a high school education plus two years of technical college and past relevant work as a bus driver, pizza delivery driver, cashier, and assembler. Plaintiff alleges disability since May 1, 1997, due to diabetes and gastroparesis.

The ALJ found (Tr. 18-19):

1. The claimant met the disability insured status requirements of the Act on May 1, 1997, the date the claimant stated she became unable to work, and continued to meet them through March 31, 2002.

2. The claimant has not engaged in substantial gainful activity since her alleged disability onset date of May 1, 1997.

3. The medical evidence establishes that during the relevant period from the claimant's alleged disability onset date of May 1, 1997, through her date last insured of March 31, 2002, she had severe insulin dependent diabetes mellitus and diabetic gastroparesis, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix I, Subpart P, Regulations No. 4.

4. The claimant's statements and testimony regarding pain and other subjective symptoms with resultant limitations are not substantiated by the total evidence of record and not credible.

5. The combination of the claimant's impairments during the relevant period from the claimant's alleged disability onset date of May 1, 1997, through her date last insured of March 31, 2002, resulted in the following residual functional capacity: she could not lift or carry over 20 pounds occasionally and 10 pounds frequently; she could not stand and/or walk over 6 hours in an 8 hour workday; she could only occasionally stoop, twist, crouch, kneel, and climb stairs or ramps; she could not crawl or climb ladders or scaffolds; and she needed to avoid hazards such as unprotected heights and dangerous machinery.

6. The claimant was unable to perform her past relevant work as a school bus driver, pizza delivery worker, cashier, and assembler.

7. The claimant was 45 years old as of her alleged disability onset date and she was 50 years old as of her date last insured.

      8.      The claimant has a 12th grade education.

      9.      The claimant has acquired work skills, such as clerical/numerical, making change, completing forms, which she demonstrated in past work, and which, considering her residual functional capacity, can be applied to meet the requirements of other work.

      10.      Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rules 202.22 and 202.15, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

      11.      Although the claimant's additional non-exertional limitations did not allow her to perform the full range of light work during the relevant period from her alleged disability onset date of May 1, 1997, through her date last insured of March 31, 2002, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which she could perform.

      12.      The claimant was not under a "disability," as defined in the Social Security Act, at any time during the relevant period from her alleged disability onset date of May 1, 1997, through her date last insured of March 31, 2002.

On August 23, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on October 18, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

3

continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff was diagnosed with diabetes-related gastroparesis[2] in 1989.  Plaintiff was treated by Dr. Kent Cunningham, a gastroenterologist, from March to May 1994.  Tr. 113-115.  A gastric emptying study in 1994 was "markedly abnormal" with the normal half-life for gastric emptying being 16-83 minutes while Plaintiff's was at least 189 minutes.  See Tr. 113-114, 141, 291.

Plaintiff does not appear to have sought treatment again until December 1997, when she was treated by Dr. Arland Compton, a family practitioner.  On December 29, 1997, Dr. Compton noted that Plaintiff had been treated at the emergency room for nausea and neck pain on December 26, 1997.  Dr. Compton diagnosed Plaintiff with persistent abdominal pain and referred her back to Dr. Cunningham for reevaluation.  Tr. 128.  Plaintiff transferred her general care to Dr. Clay Lowder, a family practitioner, beginning in January 1998.  Tr. 120-131.

On January 6, 1998, an esophagogastroduodenoscopy ("EGD") revealed Plaintiff was suffering from "[e]sophagitis which is likely secondary to the nausea and vomiting from gastroparesis."  Tr. 138-140.  Plaintiff was hospitalized at Tuomey Regional Medical Center for severe nausea and vomiting from January 29 to February 4, 1998.  After several days of treatment, Plaintiff's condition slowly resolved.  The final diagnoses were diabetic gastroparesis, gastroesophageal reflux disease ("GERD") with peptic ulcer disease and esophagitis, persistent nausea and vomiting secondary to above, type-I diabetes mellitus with mild ketosis, and urinary

---

[2]Gastroparesis is a "paralysis of the stomach." Dorland's Illustrated Medical Dictionary 759 (30th ed. 2003).

4

retention with a distended urinary bladder. Tr. 91-100. On February 5, 1998, Dr. Lowder noted that Plaintiff reported that she felt better and on occasional days when eating was a problem she drank sugar-free Carnation drink. Her blood sugars were consistently running 110 to 130. Tr. 126.

Plaintiff was hospitalized at Tuomey Regional Medical Center from March 13 to 16, 1998. She was diagnosed with esophagitis with recurrent nausea and vomiting, peptic ulcer disease, history of GERD, and history of diabetic gastroparesis. An abdominal ultrasound was normal. Tr. 101-104. On March 30, 1998, an EGD showed a 30 to 34 centimeter ulceration of Plaintiff's esophagus. Tr. 137.

Plaintiff was again admitted to Tuomey Regional Medical Center for recurrent nausea and vomiting from May 27 to June 1, 1998. Tr. 105-109. On June 19, 1998, an EGD revealed severe esophagitis and gastroparesis. Tr. 135-136.

On July 8, 1998, Dr. Cunningham noted that Plaintiff had burning when eating, but her nausea and vomiting were doing well and were not bothersome. Plaintiff's weight had increased to 111.2 pounds from her weight of 105 when she was hospitalized in March 1998. Dr. Cunningham diagnosed Plaintiff with persistent esophagitis by endoscopy done June 19, 1998, which is due to acid reflux from Plaintiff's gastroparesis; diabetes mellitus with complications; and a history of peptic ulcer disease. Tr. 112. On October 1, 1998, Dr. Cunningham noted that Plaintiff had nausea, but no vomiting, and had not required hospitalization since he last saw her. She had gained approximately eleven pounds since July 1998. Dr. Cunningham diagnosed persistent esophagitis with "very improved" symptoms on "very strong acid suppression" medications, diabetes mellitus with complications, and a history of peptic ulcer disease. Tr. 111.

As noted above, Plaintiff's insured status expired on March 31, 2002.  On April 1 and April 28, 2002, Plaintiff was treated at Tuomey Regional Medical Center for nausea, vomiting, and diarrhea.  On both occasions, she was treated and released.  Tr. 116-119.

On April 12, 2002, Dr. Lowder noted that Plaintiff had not been seen by him since July 1998 "due to no health insurance."  Tr. 121.  On April 30, 2002, an EGD showed "[u]lcerative esophagitis likely secondary to diabetic gastroparesis."  Tr. 132-134.

From December 5 to 7, 2003, Plaintiff was treated at Tuomey Regional Medical Center for nausea and vomiting.  Her discharge diagnosis was severe erosive gastroesophagitis.  It was noted that "plaintiff has an episode similar to this several times yearly" and "patient gets like this about once every 3 years."  Tr. 150-168.

Plaintiff was treated in the emergency room (and released) on February 17 and on April 2, 2004.  169-175.  On April 8, 2004, Dr. Christopher Lahr, a colon and rectal surgeon, performed an examination of Plaintiff at the request of the Medicaid disability administrator.  Dr. Lahr summarized Plaintiff's history and symptoms, diagnosed gastroparesis, and ordered further testing.  He noted that Plaintiff might benefit from a gastric electrical stimulator.  Tr. 254-256.  On May 7, 2004, Dr. Lahr wrote that Plaintiff was "waiting on Medicare approval so she can get a gastric electrical stimulator."  He noted that Plaintiff "has been having to go to the emergency room every few days for IV fluids; the way to alleviate this is, we will try to get her set up for a [feeding] tube percutaneously placed."  Tr. 253.  Plaintiff was hospitalized from May 9 to 14, 2004 for severe diabetic gastroparesis and placement of a feeding tube.  Tr. 176-198.

On May 27, 2004, Dr. Lahr noted that Plaintiff recently had a feeding tube surgically placed and she was "doing very well with this."  He subsequently reviewed an EGD dated May 10, 2004,

6

which showed "severe distal esophagitis, worsening since her last exam." Plaintiff was hospitalized from May 27 to June 9, 2004 for diagnostic studies. Tr. 199-215, 252. On July 30 and August 6, 2004, EGDs showed esophageal stricture, erosive esophagitis, dysphagia, and diabetes-related gastroparesis. Tr. 216-237.

On November 3, 2004, Dr. Lahr wrote a letter indicating that Plaintiff had diabetic gastroparesis since 1998. He opined that:

> [Plaintiff] is completely unable to do work of any kind because she is chronically nauseated and vomits many times per day. Hopefully she may be a candidate for a gastric electrical stimulator, which may relieve some of her symptoms. This patient is totally disable[d] with severe symptoms caused by gastroesophageal reflux, an esophageal stricture, and severe gastroparesis causing complete stomach paralysis with resulting pain, nausea, and vomiting that are chronic and persistent in nature. She is unable to eat. She must feed herself through tubes into her intestine.

Tr. 251.

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence because his hypothetical questions to the VE did not reflect all impairments supported by the record; (2) the ALJ's finding that Plaintiff was not disabled on or before her date last insured is not supported by substantial evidence; and (3) at the very least, substantial evidence in the record required the ALJ to award a closed period of disability. The Commissioner contends that substantial evidence supports the ALJ's decision.

    A.    <u>Substantial Evidence</u>

Plaintiff alleges that substantial evidence does not support the ALJ's decision that she was not disabled from her onset date through her last date insured. Alternatively, she alleges that she should be awarded benefits for a closed period from May 1, 1997 through October 1998, and ongoing disability benefits beginning December 31, 2001. The Commissioner contends that the

7

ALJ's decision that Plaintiff was not disabled during the relevant time period is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work and that she was not "disabled" during the relevant time period is supported by substantial evidence. Although Plaintiff required general medical care from December 1997 to October 1998 and was at times hospitalized for nausea and vomiting related to her severe impairments, the evidence showed that her symptoms "responded well to IV fluids and medications and the episodes resolved within a few days each time." Tr. 16, see Tr. 91-92, 101, 105. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986). Dr. Cunningham's notes showed that Plaintiff significantly improved with medications during 1998 (Tr. 111-12) and the record did not reflect significant complaints of nausea or vomiting during the remainder of the relevant time period.

The ALJ's decision is also supported by the opinion of the State agency physicians who reviewed Plaintiff's medical records. 20 C.F.R. §§ 404.1527(f) (2) and 416.927(f)(2); SSR 96-6p

("Findings of fact made by State agency ... [physicians]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On September 10, 2004, Dr. Charles Jones, a State agency physician, reviewed the evidence and opined that prior to her date last insured Plaintiff retained the capacity to lift/carry twenty pounds occasionally and ten pounds frequently; sit and stand/walk about six hours each in an eight-hour workday; frequently balance; occasionally climb ramps and stairs; occasionally crouch; never climb ladders, ropes, and scaffolds; and never stoop, kneel, or crawl. Tr. 242-250. A second State agency physician examined the record in February 2005, and opined that Plaintiff's physical impairments were the same as Dr. Jones' assessment. Tr. 240-241.

Additionally, the ALJ's decision is also supported by Plaintiff's testimony that as of March 2002, she did not have any limitations lifting, pushing, or pulling, and she could climb ladders, stoop, bend, crawl, "do a fair bit of walking," cook, wash, and clean. Tr. 298-302.

Plaintiff, in her reply brief, argues that the Commissioner did not refute her assertion that she is entitled to an award of disability for the closed period from May 1, 1997 through October 1998 and that when she turned 50 years of age on December 31, 2001, substantial evidence established that she was clearly disabled at that time and thereafter. Plaintiff's Reply Brief at 4. The Commissioner, however, specifically argued that "the ALJ properly considered the entire record and gave specific reasons for finding that although Plaintiff's condition deteriorated after the expiration of her insured status, she was not disabled for any continuous 12-month period during the closed period at issue, between May 1, 1997, her alleged onset of disability date, and March 31, 2002, when her insured status expired." Commissioner's Brief at 11.

Although Plaintiff claims she should be awarded a closed period of benefits from May 1, 1997 to October 1998, and then be awarded benefits starting on December 31, 2001, she has not shown that benefits should be awarded. The medical records indicate that Plaintiff received medical treatment for her impairments in 1994. Although she claims an onset date of May 1, 1997, there is nothing in the medical records to support such an onset date. The next medical records after 1994 are not until December 1997, when Plaintiff was treated by Dr. Compton. Tr. 128. Plaintiff was hospitalized for short periods of time on three occasions in early 1998, but on July 8, 1998 Dr. Cunningham noted that Plaintiff's nausea and vomiting were doing well and were not bothersome. Tr. 112. She did not receive care again until October 1, 1998, at which time Dr. Cunningham noted that Plaintiff had nausea, but no vomiting and had not required hospitalization. Tr. 111. Plaintiff did not seek medical care again until April 2002 (approximately three and one-half years later). Thus, Plaintiff fails to show that she was disabled for a period of at least twelve continuous months.

On numerous occasions in her brief and reply brief, Plaintiff argues that her impairments were debilitating in 2004 and that she is currently debilitated due to gastroparesis and diabetes-related complications. See Plaintiff's Brief at 1, 10-11; Reply Brief at 1, 4. Although Plaintiff's condition sadly deteriorated in 2004 and appears to have worsened since that time,[3] Plaintiff simply fails to show that she was disabled for any continuous twelve-month period during the closed period at issue.

Plaintiff argues that her treatment shortly after her last date insured is relevant to show that she was disabled during the time prior to her last date insured. Although Plaintiff's treatment in

---

[3]Plaintiff states that as of April 2007 she is in a wheelchair, receives nutrition through a feeding tube and is under Hospice care. Unfortunately, as noted above, her last date insured was over five years prior to this time.

10

April 2002 may be relevant to the time prior to her last date insured, these medical records fail to indicate that Plaintiff was disabled for a period of at least twelve continuous months. Plaintiff was treated twice in the emergency room in April 2002 for nausea and vomiting. She, however, was released later in the day each time. Plaintiff was treated by Dr. Lowder in April 2002. Significantly, however, she did not seek treatment again until December 2003. The ALJ expressly considered evidence dated after the expiration of Plaintiff's insured status, including Dr. Lahr's November 2004 opinion that Plaintiff was unable to work (Tr. 251). Tr. 15. The ALJ's decision to accord this opinion little weight is supported by substantial evidence because it was rendered more than two years after Plaintiff's date last insured, it was based on Plaintiff's medical status more than two years after her date last insured, and the medical records did not show such severe medical problems during the relevant period up to Plaintiff's date last insured.

Plaintiff also argues that she did not seek medical treatment during the relevant time period because she could not afford it. Plaintiff's Brief at 9. In general, a claimant's failure to obtain medical treatment that she cannot afford cannot justify an inference that her condition was not as serious as she alleged. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986); see also Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)("It flies in the fact of the patent purposes of the social Security Act to deny benefits to someone because he is too poor to obtain medical treatment

that may help him."). There is, however, no evidence that Plaintiff sought lower-cost treatment[4] or that she was denied treatment for financial reasons.[5]

B.      Hypothetical to VE

Plaintiff alleges that the ALJ erred by failing to pose a hypothetical to the VE which reflected all of her impairments. Specifically, she claims that the ALJ erred by posing hypothetical questions which restricted her to occasional stooping and occasional kneeling, while the State agency physicians restricted her to no stooping and no kneeling. The Commissioner contends that the ALJ posed a proper hypothetical because Plaintiff testified that her limitations prior to March 2002 would not preclude these activities and that some of the jobs identified by the VE did not require these activities such that any error is harmless.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

The hypothetical by the ALJ fairly set out Plaintiff's credible limitations. Although the State agency physicians opined that Plaintiff should not stoop or kneel, Plaintiff testified that her

---

[4]In April 2002, Dr. Lowder's nurse noted that Plaintiff should check with CareSouth for a "sliding fee scale service due to no insurance" (Tr. 120), which suggests that a lower-cost care option was available to Plaintiff.

[5]Plaintiff also appears to argue that the ALJ failed to adequately develop the record at the hearing as to her health problems from 1999 to 2002. Here, Plaintiff was represented by counsel (she is represented currently by different counsel), who questioned Plaintiff at the hearing. It was not indicated at the hearing that the record was incomplete.

limitations prior to March 2002 would not preclude her from stooping, bending, or crawling. Tr. 298-300. Further, even if the ALJ erred in not including these restrictions in his hypothetical to the VE, such error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994)(affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). According to the Dictionary of Occupational Titles ("DOT"), two of the jobs identified by the VE do not require any stooping, kneeling, or crouching. See DOT 222.487-014 (order filler) and 249.366-010 (counter clerk). These jobs existed in significant numbers in the national and local economy. The VE testified that order filler had 6,000 such jobs available in the state economy and counter clerk had 8,000 such jobs available in the state economy. Tr. 306-307.[6]

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a

---

[6]The Fourth Circuit Court of Appeals has found that 110 jobs does not constitute an insignificant number of jobs. Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979). The Eighth Circuit found that 500 jobs was a significant number in Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988); the Eleventh Circuit held that 174 locally and 1600 statewide constituted a significant number in Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987); and the Tenth Circuit, refusing to draw a bright line, found that 650-900 jobs was a significant number in Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992).

plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, <u>supra</u>.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

February 21, 2008
Columbia, South Carolina